FILED

2008 Jun-19  AM 11:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| **KATHY D. NICHOLS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:06-CV-1956-KOB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The claimant, Kathy D. Nichols, filed an application for disability insurance benefits on

June 18, 2003, alleging a disability onset date of January 29, 2003 due to back pain and

depression. (R. 11, 53).  The Commissioner of the Social Security Administration denied the

application (R. 25-26), and the claimant timely requested a hearing before an Administrative Law

Judge ("ALJ"). (R. 32).  The ALJ held an initial hearing on February 10, 2005 (R. 449), and a

supplementary hearing on June 7, 2005. (R. 426).  In the hearing decision dated September 21,

2005, the ALJ found that, although the claimant met the insured status requirement through the

date of the decision, the claimant failed to establish a disability at any time on or before the date

of the decision. (R. 21).  The ALJ concluded that the claimant was not entitled to disability

insurance benefits under Section 223 of the Social Security Act. (R. 23).  The claimant timely

requested review of the hearing decision by the Appeals Council. (R. 351).  The Appeals Council

1

found no basis for review of the ALJ's decision and denied the claimant's request for review on

July 24, 2006, rendering the findings of the ALJ the final decision of the Commissioner of the

Social Security Administration. (R. 4).  The claimant has exhausted her administrative remedies,

and sought judicial review pursuant to this court's jurisdiction under 42 U.S.C. §§ 405(g) and

1631(c)(3).  For the reasons stated below, the court will AFFIRM the decision of the

Commissioner.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability insurance benefits when

the person cannot

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected
> to result in death or which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

To make this determination, the Commissioner employs a five-step, sequential evaluation

process:

> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the
> economy?
>
> An affirmative answer to any of the above questions leads either to
> the next question, or, on steps three and five, to a finding of disability.
> A negative answer to any question, other than step three, leads to a
> determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520,

416.920.

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).  No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.  This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of the evidence that detracts from evidence on which the ALJ relied.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### III. Facts

The claimant was forty-two years old at the time of the administrative hearing and has a general equivalency diploma. (R. 429, 452).  Her past work experience includes employment as a kiln operator at a tile plant, a deli worker, a mold setter, and a sewing machine operator. (R. 434, 455).  According to the claimant, she became disabled on January 29, 2003 due to back pain and depression. (R. 11, 65).  The claimant testified that she has been unemployed since her alleged disability onset date. (R. 64, 454).

The claimant testified that she suffered an on-the-job injury pulling down a pallet at work as a kiln operator (R. 432) on February 20, 1999. (R. 91). The claimant testified that she currently suffers from chronic back pain that is "moderately severe" on a normal day. (R. 460). On February 25, 1999 Dr. Benjamin Frank Hatchett, an orthopedist at the North Alabama Bone and Joint Clinic in Florence, Alabama, saw the claimant for a complaint of back pain resulting from the work injury. (R. 191). Dr. Hatchett diagnosed a lumbosacral sprain, recommended conservative treatment and ordered the claimant to take some time off work to recover. (R. 192). Treatment notes from Dr. Hatchett show that the claimant returned on March 4, 1999 with a complaint of lingering pain. (R. 190). The claimant had, at that time, been off work since the injury and desired to accept an offer from her employer to return to work with limitations on lifting; Dr. Hatchett approved the return, and released the claimant to work with limitations. (R. 191).

On September 22, 1999, the claimant returned to Dr. Hatchett, reporting that she had been working twelve-hour shifts in a standing position sorting tiles and complaining of back and radicular leg pain. Dr. Hatchett noted no remarkable findings in the claimant's physical examination and recommended conservative treatment, issuing the claimant a lumbar support and prescribing a pain medication. Given the claimant's persistent symptomatic complaints, Dr. Hatchett referred her for a magnetic resonance imaging scan (MRI). (R. 190). On November 5, 1999, the claimant complained of pain to Dr. Hatchett, who noted that the claimant's Worker's Compensation carrier had not yet approved payment for an MRI study of the lumbar spine. Dr. Hatchett performed no physical examination and ordered the claimant to return following the completion of an MRI. (R. 189-90). The claimant received no further treatment for back pain

4

until January 18, 2002, following the MRI study on December 17, 2001. (R. 186-87).

Records from Dr. David Alan Hollis at the Killen Clinic in Killen, Alabama show that the claimant visited Dr. Hollis on five occasions from January to August 2000. (R. 140-49). The treatment notes report the claimant's treatment for gynecological complaints and related symptoms. (*Id.*).

On June 24, 2000, the claimant's hand was injured when it was caught between two machinery belts. (R. 134). Emergency department records from Eliza Coffee Memorial Hospital on that evening show that the claimant complained of pain and swelling in the right hand following the injury. (*Id.*). On June 25, 2000, the hospital performed a radiograph (X-Ray) of the claimant's hand which showed no fracture, dislocation, or abnormality. (R. 135). The claimant suffered no lacerations and an emergency room physician diagnosed the claimant with a bruised hand. (R. 132, 137-38). The physician prescribed a pain medication, instructed the claimant to ice and elevate her right hand, and released the claimant to return to work that day without restriction. (R. 136).

Following her hand injury, the claimant sought treatment from Dr. Hatchett on three occasions. On July 11, 2000, Dr. Hatchett treated the claimant's hand pain complaints. (R. 188-89). Dr. Hatchett performed a second X-Ray of the right hand and noted no abnormality, but referred the claimant to HealthSouth for occupation therapy (OT) and ordered her to continue the conservative treatment previously recommended. (R. 189). On August 1, 2000, the claimant returned for a follow-up visit with Dr. Hatchett, who found that the claimant's symptoms had improved and noted that she attributed her improvement to the OT. (R. 188). Dr. Hatchett recommended the continuation of conservative treatment and, due to the claimant's own

discontinued use of some of her prescribed medications, prescribed a replacement pain medication. (*Id.*). On July 28, 2000, the claimant returned for re-evaluation. (R. 187). Dr. Hatchett noted the claimant's significant hand improvement and released her to continue regular job activities without restriction. (R. 188).

The record contains no evidence of treatment for complaints of back pain from November 1999 until December 2001. On December 17, 2001 the claimant underwent an MRI of the lumbar spine interpreted by Dr. Donald Johnson, a radiologist at the Florence MRI Diagnostic Center, P.C., who identified spinal degeneration and a mild central herniation of the L5-S1 disc. (R. 308). On January 18, 2002, the claimant produced the MRI study for review by Dr. Hatchett, who noted the visit as the claimant's first evaluation for back pain since the order for MRI study in September 1999. (R. 186-87). He reviewed the findings of the MRI study, suggested continued conservative treatment for the residual effects of the claimant's back injury, and released the claimant to work with a twenty-pound weight lifting limitation. (R. 187). The claimant returned to Dr. Hatchett for monitoring on four occasions in the subsequent six months – February 1, March 7, April 18, and July 11 – during which Dr. Hatchett advised the claimant to continue following her conservative treatment plan, including taking medications as needed for pain and routinely performing therapeutic exercises. (R. 184-86). At the March 7, 2002 visit, Dr. Hatchett noted the claimant's report of an ability to lift thirty pounds without evidence of pain (R. 185), and placed the claimant on a weight-lifting restriction of thirty pounds. (R. 184).

On August 8, 2002 the claimant returned to Dr. Hatchett complaining of aggravated back pain due to increased physical labor at her place of employment. The treatment notes reiterate the claimant's instructed conservative treatment and suggest physical labor limitations.

6

Considering the claimant's complaints of pain, Dr. Hatchett referred the claimant for physical therapy and advised a two-week leave of absence from work. (R. 184).  On September 6, 2002, Dr. Hatchett re-evaluated the claimant's complaints of back pain. (R. 183).  The claimant reported that she had not been performing the prescribed therapeutic exercises; Dr. Hatchett again instructed the claimant to comply with the treatment program, including regular walking and stretching. He released the claimant to return to work with a weight-lifting limitation of twenty pounds.  At that time, Dr. Hatchett requested approval for physical therapy on the claimant's behalf and recommended referral for a functional capacity evaluation ("FCE"). (*Id.*).

Records from HealthSouth, submitted to the Appeals Council following the decision of the ALJ, show that the claimant received physical therapy in Florence, Alabama from September 10, 2002 to October 2, 2002. (R. 372-96).  The records show that both the claimant and the physical therapist noticed overall improvement throughout the nine physical therapy sessions, with the claimant's overall pain decreasing from a five on a ten-point scale to a four out of ten by the time of discharge. (*Id.*).

On October 8, 2002 certified disability examiner Lori Willis, RPT, CDE II, performed an FCE on the claimant at the Eliza Coffee Memorial East Diagnostic and Rehab Center. (R. 289-307).  Examiner Willis performed a battery of tests and concluded that the claimant could function safely in the competitive labor market with restrictions against repetitive bending, stooping, walking, or climbing on stairs or ladders. (*Id.* at 295).  Willis also concluded that the claimant required an option to periodically adjust her position as needed when crouching or when sitting or standing for more than sixty minutes and that the claimant required accommodation when reaching. (*Id.*).  Additionally, the examiner found that the claimant is limited to a

horizontal work plane of no more than seventeen inches away from the body when frequently lifting up to ten pounds but has an unrestricted vertical work plane. (R. 296). Based on these restrictions, the examiner concluded that the claimant qualifies for work light in physical demands in accordance with the above restrictions and unrestricted sedentary work. (*Id.*). Dr. Hatchett reviewed the FCE findings and discussed them with the claimant on October 25, 2002. (R. 181-82).

Records from Dr. Hatchett dated October 3, 2002 and October 25, 2002 show no new complaints or treatment. (R. 181-82). The claimant returned to Dr. Hatchett on January 29, 2003 – the alleged onset of disability – complaining of increased pain, possibly due to working long hours, although the claimant reported that she did no heavy lifting. Dr. Hatchett ordered the claimant to undergo a second MRI to discover whether the claimant's symptoms resulted from any change in her physical condition. (R. 181). Dr. Johnson conducted a second MRI of the lumbar spine on February 10, 2003. The study exhibited no new findings, showing an unchanged degeneration and a mild central herniation of the L5-S1 disc in the claimant's low back. (R. 265). Dr. Hatchett reviewed the MRI results on February 12, 2003. (R. 180-81). The record cites the claimant's report at that visit that she had been off from work for two weeks because her employment involved heavy work that she felt would cause an intolerable level of pain. (*Id.* at 181). Claimant reported a continued leave of work, given the lack of light duty available at her place of employment. Dr. Hatchett again instructed the claimant in various means of conservative treatment. (*Id.*).

On February 28, 2003 the claimant requested that Dr. Hatchett refer her for a consultation with a spine surgeon. (R. 180). On March 31, 2003 the claimant saw Dr. Gilbert Melson, a

neurosurgeon in practice with Dr. Hatchett, for a consultation regarding the possibility of surgical

treatment. (R. 179-80). Dr. Melson's physical examination showed that the claimant exhibited

normal and equal reflexes, a five out of five rating of motor strength, and a normal range of

motion. (R. 179). Dr. Melson observed the claimant's symptoms to be more mechanical in

nature and that the mechanical findings did not render necessary disc fusion surgery; he

recommended epidural steroid injection ("ESI") treatment. (R. 180). On April 28, 2003, Dr.

Melson re-evaluated the claimant. At that point, claimant had received two ESI treatments, but

reported that she had noticed no significant improvement. Dr. Melson delayed additional

consideration of surgical treatment pending a third ESI and released the claimant to return to

work subject to a weight lifting limitation of ten pounds with no bending, twisting, crawling,

squatting or climbing. (R. 179). On May 27, 2002 the claimant returned to Dr. Melson for a

surgical consultation, during which Dr. Melson noted the claimant's development of a

component of depression; given the development, Dr. Melson recommended a psychological

consultation be conducted before further pursuing any surgical options. (R. 178). The record

from a June 17, 2003 follow-up reflects Dr. Melson's opinion of "a holding pattern" concerning

further treatment and possible surgical options pending approval by the claimant's Worker's

Compensation carrier for additional evaluation[1] (R. 178, 263); records of July 29, 2003 and

---

[1] Some confusion exists as to what "evaluation" Dr. Melson was referencing in the June 17, 2003 treatment records. Although the claimant maintains the evaluation was an MRI study, the court interprets Dr. Melson's use of "evaluation" to mean a psychiatric evaluation. On May 27, 2003 – at the appointment immediately preceding the June 17, 2003 appointment – Dr. Melson requested that the claimant undergo a psychological evaluation at the Riverbend Center for Mental Health (R. 178) and, on July 29, 2003, again noted a delay in surgical consideration pending the psychological evaluation. (R. 263). Records contemporaneous to June 17, 2003 do not mention MRI studies.

9

August 25, 2003 visits again suggested continued conservative treatment pending a psychological evaluation. (*Id.*).

On August 20, 2003 the claimant enrolled at the Riverbend Center for Mental Health as an outpatient. (R. 204). A September 22, 2003 psychiatric evaluation by a Riverbend staff pyschiatrist noted that with one month of anti-depressant treatment – prescribed by Dr. Melson (R. 262) – the claimant demonstrated continued milder depression diagnosed as moderate, single episode major depression. (R. 285). Treatment records from December 2003 to September 2004 demonstrate consistent improvement in the claimant's depression and global assessment of functioning scores ("GAF") (which increased from a 60 at the initial evaluation in September 2003 to a range of 65-70[2] by 2004).

Following the initial evaluation at Riverbend, the claimant returned to Dr. Melson on September 29, 2003; records note the claimant's improvement with her prescribed pain and depression medications and use of a back brace. (R. 262). Dr. Melson still did not consider the claimant to be a good surgical candidate and suggested either further evaluation by Dr. Hatchett or the renewal of prescriptions. (*Id.*).

Subsequent to the filing of her benefits application, the claimant underwent both psychological and physical consultative examinations. On October 1, 2003, Bonnie L. Atkinson, Ph.D., a licensed psychologist, conducted a consultative comprehensive psychological

---

[2] According to the *Diagnostic and Statistical Manual of Mental Disorders*, a GAF of 61-70 denotes "some mild symptoms (*e.g.*, depressed mood and mild insomnia), or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household)." *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., Am. Psychiatric Ass'n 2000).

examination of the claimant. (R. 210-14).  Dr. Atkinson classified the claimant as severely

mentally ill, with a GAF of 45[3] and recommended psychiatric treatment. (*Id.* at 214).

On October 2, 2003 Dr. Lloyd Johnson, a physician, conducted a consultative physical

examination of the claimant. (R. 215-22).  Dr. Johnson classified the claimant as likely unable to

do work activity related to prolonged sitting, standing, walking, lifting, or carrying but able to

handle small objects, hear, speak, and travel. (*Id.* at 217).

On October 27, 2003 the Disability Determination Service ("DDS") issued a physical

residual functional capacity ("RFC") assessment, completed by a DDS physician. (R.  223-30).

The assessment concluded that the claimant had the physical RFC to occasionally lift up to fifty

pounds, to frequently lift up to twenty-five pounds and to sit (with normal breaks) for a total of

about six hours in an eight-hour work day (R. 224); the assessment's conclusion notes the

claimant's limitations against frequent climbing, balancing, stooping, kneeling, crouching, and

crawling and unlimited ability to push, pull, or manipulate.  (R.  224-26).  The assessment opined

the claimant's subjective symptoms to be disproportionate to objective findings (concluding that

the perception of symptoms may be exacerbated by the claimant's depression).  (R. 228).  Given

that the claimant had received conservative treatment only, the DDS physician estimated that

more aggressive treatment would be beneficial and enable the claimant to perform work of a

medium level of physical exertion. (*Id.*).  The assessment noted that Dr. Johnson concluded that

the claimant was unable to perform prolonged sitting, standing, walking, lifting, and that the

---

[3] According to the *Diagnostic and Statistical Manual of Mental Disorders*, a GAF of 41
to 50 denotes "serious symptoms (*e.g.*, suicidal idealation, severe obsessional rituals, frequent
shoplifting) or any serious impairment in social occupational or school functioning (e.g. no
friends, unable to keep a job)." *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th
ed., Am. Psychiatric Ass'n 2000).

degree or restriction of the conclusion was not supported by objective evidence; the RFC report notes some inconsistencies in comparison to Dr. Johnson's consultative examination and, noting a lack of objective evidentiary support for Dr. Johnson's conclusions, gives little weight to the opinion. (R. 229).

On October 28, 2003, the DDS issued a mental RFC assessment, completed by a DDS psychologist, Kenneth Warren, Ph.D. (R. 231-48).  The assessment concluded that the claimant suffers from a major depressive disorder with no major episodes of decompensation, which moderately limits the claimants restriction of activities and daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace. (R. 241).  Dr. Warren concluded that the claimant may be moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, and to work in coordination with or proximity to others without being distracted by them (R. 245-46); the claimant is moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. (R. 246).  The assessment noted Dr. Atkinson's consultative opinion that the claimant has insufficient judgment to make acceptable work decisions, but Dr. Warren found that neither Dr. Atkinson's past treatment of the claimant nor the objective evidence indicates the severity of the suggested impairment and recommended that Atkinson's opinion be given little

12

weight. (R. 243).  Dr. Warren concluded that the claimant was mentally able to complete an eight-hour workday, provided customary breaks from work and the above moderate limitations. (R. 247).

In 2004, the claimant's counsel referred the claimant to Thomas Elliott, M.A., C.R.C., a rehabilitation and vocational expert, for a comprehensive vocational assessment with vocational impairment rating of the claimant's condition resulting from her 1999 on-the-job-injury. (R. 112).  Elliott saw the claimant on February 27, 2004 and completed an assessment report on March 8, 2004. (R. 112-17).  In accordance with the *Dictionary of Occupational Titles #* 573.687-038, Elliott classified the claimant's past work as a tile sorter as low end semi-skilled employment at the light exertional level of physical demands. (R. 113); Elliott classified the claimant's remaining past work as low end semi-skilled employment at the light to medium exertional level of physical demands. (R. 114).  Reflecting the findings of the FCE that the claimant had the capacity to perform limited light work and unlimited sedentary work, the VE concluded that the claimant was precluded from performing her past relevant work ("PRW"). Relying on the claimant's reports of a need to lie down during the day for back pain, the VE concluded that the claimant had a 100% vocational impairment and encouraged continued psychiatric treatment. (R. 117).

In treatment records dated February 17, 2004, Dr. Hatchett noted sufficient pain management with the continuation of lumbar support use and medication and opined that the claimant's physical state had not changed significantly since the year 2000. (R. 262).  On May 11, 2004, the claimant returned, complaining of some radicular leg pain; Dr. Hatchett noted a decrease in the claimant's status, possibly due to significant weight gain. (R. 260-61).

13

Emergency department records from the Eliza Coffee Memorial Hospital dated August 12, 2004 show that the claimant complained of moderate intermittent back pain. (R. 253).  Neurological tests showed no abnormality, and the emergency room physician prescribed a pain medication and discharged the claimant. (*Id.*).  The claimant complained again of radicular pain on August 18, 2004.  A straight leg raising test caused the claimant some pain at that time, and Dr. Hatchett treated the claimant with a pain medication injection. (R. 260).  On August 25, 2004 the claimant returned, stating that she was much improved.  Dr. Hatchett noted no complaint of radicular pain and a negative straight leg raising test and reiterated conservative treatment with a exercise or walking program, weight loss, the use of a lumbar support, and medication. (R. 260).   An MRI of the lumbar spine conducted at HealthSouth on January 26, 2005 showed no change in the claimant's back impairment. (R. 268).

An ALJ held an initial hearing on February 10, 2005. (R. 449).  The claimant testified as to her work history and subjective symptoms of her alleged disability. (R. 449-68).  The claimant classified her daily pain as moderately severe and claimed a general inability to complete daily household tasks, with the exception of personal grooming, such as the ability to "do [her] own hair, put on [her] own make-up...shower...or bathe." (R. 449-68).  The claimant and her counsel cited to records that had not been made available to the ALJ, who subsequently suspended the hearing and postponed the hearing until receipt of the supplemental evidence. (R. 466-67).  Prior to the supplemental administrative hearing, the claimant produced as additional evidence medical records from December 2004 to May 2005 containing treatment notes from group and individual psychotherapy sessions (R. 312-40) and medical records from the Eliza Coffee Memorial Hospital dated February 26, 2005, noting the claimant's admission for a prescription drug

14

overdose, classified as a suicide attempt (R. 341-50); the claimant had an estimated GAF of 31

upon admission (R. 342).  Dr. John Davis discharged the claimant on March 2, 2005, classifying

the claimant as improved and in stable condition with a GAF of 50 (*Id.*), and recommended

follow-up evaluations at Riverbend. (*Id.*).  A progress note from Riverbend dated April 12, 2005

reflects the opinion of the staff psychologist that the claimant's maturity of insight had increased

(R. 319); the claimant's GAF was estimated to be a 55.[4] (*Id.*).

       The ALJ held the second hearing on June 7, 2005. (R. 426-48).  The claimant testified

that Dr. Hollis had diagnosed by her with carpal tunnel syndrome in both hands, "worse in [the]

right." (R. 436).  However, the ALJ noted that the evidence of record established no such

diagnosis. (R. 443).  The ALJ declined the claimant's request that he order a manual dexterity

test, questioning the validity of such tests and refusing any such order absent an objective

diagnosis with a hand-related impairment. (R. 447-48).  The claimant testified of an ability to

walk an estimated one-half mile and reported that she needed aid in completing household

chores. (R. 440-41); the claimant alleged severe impairments due to her back pain, testifying that

a typical day consisted of sitting, watching TV, walking around outside, and napping. (R. 442).

The claimant testified that she must lie down due to back pain three to four days out of a week.

(*Id.*).

       Vocational expert ("VE") Thomas Elliott testified at the second hearing.  VE Elliott had

previously performed the claimant's comprehensive vocational assessment.  The ALJ posed a

---

[4] According to the *Diagnostic and Statistical Manual of Mental Disorders*, a GAF of 51
to 60 denotes "moderate symptoms (*e.g.*, flat effect and circumstantial speech, occasional panic
attacks) or moderate difficulty in social, occupational or school functioning (e.g. few friends,
conflicts with peers or co-workers)." *Diagnostic and Statistical Manual of Mental Disorders* 32-
34 (4th ed., Am. Psychiatric Ass'n 2000).

hypothetical question to the VE – based on an individual of the claimant's age, educational level,

work history, and a sedentary, sit/stand option with no more than moderate impairments to

activities of daily living, social functioning, concentrating, persistence and pace – regarding

whether an individual like the claimant could perform the claimant's PRW or work in the

national economy. (R. 445). Elliot responded that such an individual would be unable to perform

the claimant's PRW. (*Id.*). Elliot used the claimant's RFC, assessed at the hearing as the ability

to perform sedentary unskilled jobs (R. 443), to conclude that jobs were available to the claimant

in the regional and national economy at the sedentary level of physical exertion, including work

as a final assembler, rotor assembler, or tester of an electronic component; such potential

vocational opportunities exist in a number equal to or greater than 2,500 each within a 200-mile

radius of Florence, Alabama and in numbers in excess of 300,000 each in the national economy.

(R. 445). The ALJ posed a second hypothetical question regarding the claimant's ability to

perform the potential employment if she had greater than moderate limitations to activities of

daily living, social functioning, concentration, persistence or pace, to which the VE responded

that greater-than-moderate limitations would preclude sustained employment. (R. 446).

The ALJ concluded that the claimant's impairments of degenerative spinal changes and a

herniated L5-S1 disc, major depression, borderline personality disorder, and obesity are

impairments that are "severe" based on the requirements in the 20 C.F.R. § 404.1520; however,

the claimant's impairments do not meet or medically equal a listed impairment in Appendix 1,

Subpart P, Regulation No. 4. (R. 22). The ALJ found that the claimant had limited credibility.

(R. 20). The ALJ then noted inconsistencies in the claimant's testimony regarding her own

mental health and the evidence of record. For example, the claimant responded inconsistently to

16

inquiries regarding her suicide attempts: she reported to an emergency room physician that she had made six previous suicide attempts, but reported to Dr. Atkinson that she had attempted suicide only once. (R. 18).  The ALJ found that the objective medical evidence did not substantiate the claimant's subjective symptoms and gave the subjective allegations of pain less weight, as they did not satisfy the Eleventh Circuit pain standard. (R. 19).  Although the evidence of record shows an underlying medical condition, the ALJ found that the objective medical evidence did not confirm the claimant's allegations of severity and that no evidence suggested that the claimant's established condition could reasonably expected to give rise to the severity of pain alleged. (*Id.*).

The ALJ, considering the evidence of record, concluded that the claimant has the RFC to perform a significant range of sedentary work, pursuant to 20 C.F.R. § 404.1567. (R. 22). Although in her October 2003 consultative examination, Dr. Atkinson gave the claimant a GAF rating of 45 (consistent with serious impairments of occupational functioning), treating staff psychiatrists at Riverbend opined that the claimant suffered moderate – not severe – impairments of occupational functioning; the ALJ found Dr. Atkinson's opinion to be inconsistent with the opinions of the claimant's treating psychiatrists, and accordingly, gave Dr. Atkinson's opinion less weight. (R. 15-16).  The ALJ also gave greater weight to the opinions of the claimant's treating orthopedist, Dr. Hatchett, and to the 2002 FCE, which are consistent with the ALJ's RFC determination. (R. 21).  The ALJ gave less weight to the initial physical limitations contained in the physical RFC assessment because a non-treating physician conducted the assessment, and medical evidence of record subsequent to the assessment was generally consistent with the RFC determination. (*Id.*).

17

Based on the RFC determination – the ability to do sedentary work subject to moderate psychological limitations – and pursuant to 20 C.F.R. § 404.1565, the ALJ concluded that the claimant was precluded from performing her PRW. (R. 22).  The ALJ did conclude that a significant number of jobs are available in the national economy that the claimant could perform. (R. 22).  Considering the testimony of the VE at the administrative hearing and Rule 201.28 of the *Medical Vocational Guidelines*, the ALJ enumerated vocational opportunities available to the claimant (R. 21), and accordingly concluded that the claimant was not disabled within the meaning of the Social Security Act at any time on or before the date of the ALJ decision on September 21, 2005. (R. 21-23).

Following the decision of the ALJ, the claimant submitted additional evidence for review to the Appeals Council.  November 9, 2005 treatment records from the Southern Rural Health Care Consortium show that the claimant complained of stomach bloating and swelling and acid reflux; the claimant received samples of reflux medication and a prescription for an asthma medication. (R. 352-56).  Evidence from the North Alabama Bone and Joint Clinic shows that the claimant sought treatment on six occasions from July to November 2005. (R. 357-66).  On July 7, 2005, Dr. Hatchett referred the claimant for a lower extremity electrodiagnostic study (R. 358); the study conducted on July 28, 2005 by Dr. J. Stephen Howell, an osteopathic physician, showed no obvious evidence of radiculopathy. (R. 364-65).  Dr. Hatchett's records from August 4, 2005 note that the claimant "does not complain of any radicular pain ordinarily." (R. 361).  Dr. Hatchett instructed the claimant to return following a surgical re-evaluation. (*Id.*).

The claimant returned on October 11, 2005 complaining of exacerbated back pain following an attempt to pick up a chair and requesting a referral to a different neurosurgeon, as

18

she "did not like Dr. Savage." (R. 362).  Dr. Hatchett gave the claimant a pain medication injection in the lower lumbar area and opined that the claimant would benefit from physical therapy. (*Id.*).  On October 25, 2005, Dr. Hatchett noted that claimant's symptoms may indicate carpal tunnel syndrome, a diagnosis of which would require nerve conduction velocity ("NCV") tests (R. 363).  On October 28, 2005 the claimant underwent an MRI of the lumbar spine at HealthSouth, which showed a new finding of an L4-5 tiny right sided disc herniation, in conjunction with the claimant's existing L5-S1 very small central disc herniation. (R. 369).  A second electrodiagnostic study conducted on November 14, 2005 by Dr. Stephen Howell showed some L4-5 scattered denervation potential (R. 360); the report noted that the finding was not inconsistent with the claimant's complaint of radiculopathy. (*Id.*).

The Appeals Council found that the newly submitted evidence provided no basis for changing the ALJ's decision and denied the claimant's request for review on July 24, 2006. (R. 4-5).

## IV. Issues Presented

In this appeal, the claimant argues that the Commissioner erred in three ways.  First, the claimant alleges that the ALJ's RFC determination is not supported by medical evidence and, thus, is not supported by substantial evidence.  Second, the claimant alleges that substantial evidence does not support the ALJ's credibility determination.  Third, the claimant alleges that the Commissioner failed to establish other work in the national economy available to the claimant.  The claimant also alleges that the Appeals Council did not properly consider the evidence newly submitted in her request for review and so committed a reversible error in failing to remand the matter to the ALJ for further consideration.

19

## V. Discussion

The ALJ followed the five-step sequential evaluation process for determining whether the claimant is "disabled" under the Social Security Act, ultimately determining at the end of the fifth step that the claimant is able to perform other work within the economy and so is not disabled as defined by the Act. (R. 22). This court must affirm the decision of the Commissioner as to a claimant's disability benefits application if the decision is supported by substantial evidence and the ALJ applied the correct legal standards. *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Lewis v. Callahan*, 125 F.3d 1436, 1439-1440 (11th Cir. 1997) (holding that a decision by the Commissioner will not be disturbed if, in light of the record as a whole, it appears to be supported by substantial evidence). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must view the record in its entirety and take account of evidence that detracts from evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## A. The ALJ's determination of the claimant's RFC

The claimant alleges that the ALJ's RFC determination is not supported by the medical evidence of record. Federal law requires that an alleged disabling physical impairment be supported by medical evidence. 20 C.F.R. § 404.1508. The claimant bears the burden of establishing the existence of a disability and producing evidence in support of that claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The law in this Circuit demands that the ALJ consider all medical evidence when making a disability determination. *Lewis*, 125 F.3d at 1440.

20

The ALJ's decision concluded that the claimant has the RFC to perform a significant range of sedentary work, subject to the availability of a sit/stand option and no more than moderate limitation of daily activity, social functioning, or the ability to maintain concentration, persistence, and pace. (R. 22).  The ALJ properly considered the medical opinions of record, and the RFC determination is supported by substantial evidence.

Contrary to the claimant's assertions that the non-occurrence of a state agency medical consultative review of the medical evidence violated 20 C.F.R. § 404.1546, the instant case falls under 20 C.F.R. § 404.1546(c).  That regulation states that "[i]f your case is at the administrative law judge hearing level under §404.929 . . . the administrative law judge . . . is responsible for assessing your residual functional capacity."  Pursuant to the Social Security Administration Regulations, the ALJ was not bound to solicit a State agency consultative review of the medical evidence of record.

The claimant then alleges that the ALJ "reached his conclusion . . . by pure speculation," and that "there is no evidence supporting the ALJ's [RFC] assessment" (Cl. Br. 15-16).  The ALJ's decision cites to specific medical evidence of record in support of his decision that the claimant can perform sedentary work.  The ALJ noted that the claimant's treating orthopedist, Dr. Hatchett, continually limited the claimant to light work.[5] (R. 20).  Dr. Hatchett repeatedly restricted the claimant to a weight lifting limitation of twenty pounds. (R. 181, 182, 185, 186, 190-91).  The ALJ properly noted that treatment notes dated February 17, 2004 – after the alleged onset of disability – contain Dr. Hatchett's opinion that the claimant's physical status had not

---

[5] Light work involves "lifting no more than 20 pounds." *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1567(b).

21

changed since 2000. (R. 20).  At that time, Dr. Hatchett advised the claimant to continue

conservative treatment with prohibitions against heavy lifting and repetitive bending. (R. 262).

The ALJ also cited the October 2002 FCE in which Lori Willis concluded that the claimant

qualified for restricted light work and unrestricted sedentary work. (R. 21).

        The Commissioner may reject any medical opinion if the evidence supports a contrary

finding. *Sryock v. Heckler,* 764 F.2d 834, 835 (11th Cir. 1985).  The ALJ must state with

particularity the weight given different medical opinions and the reasons therefor. *Sharfarz v.*

*Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053

(11th Cir. 1986).  In this case, the ALJ properly stated that greater weight should be accorded to

the findings of the claimant's treating physicians than to the conclusions of Dr. Johnson's

consultative examination. (R. 19).  The ALJ noted that Dr. Johnson's findings are inconsistent

physical examinations by Drs. Melson and Hatchett, some of which occurred subsequent to the

consultative examination, and accordingly, the ALJ concluded that the treating physicians'

findings should be favored. (R. 19-20).  Additionally, although Dr. Johnson opined that the

claimant was unable to tolerate prolonged sitting, standing, walking, lifting, or carrying, but that

she could handle small objects (R. 217), the ALJ inferred that these limitations, too, support the

general RFC determination that the claimant may perform sedentary work,[6] subject to the

availability of a sit/stand option. (R. 20).

        The ALJ properly considered the medical evidence of record.  The opinions of the

_____

        [6] "Sedentary work" involves lifting no more than 10 pounds at a time. 20 C.F.R. §
404.1567(a), [20 C.F.R. § 416.967(a)]; *see also Kelley v. Apfel*, 185 F.3d 1211, 1213 n.2 (11th
Cir. 1999) (holding that "periods of standing or walking should generally total no more than
about 2 hours of an 8-hour work day, and sitting should generally total approximately 6 hours of
an 8-hour day").

claimant's treating physicians infer an ability to perform light work.  The claimant herself reported to Dr. Hatchett – after the alleged onset of disability – that she felt unable to perform heavy work duty and was no longer working due to the unavailability of light work at her place of employment. (R. 180-81).  The FCE concluded that the claimant had the capacity to perform unrestricted sedentary work. (R. 296).  The record, as available to the ALJ at the time of the second administrative hearing, shows no change in the claimant's diagnosis of back ailments in MRIs from December 17, 2001, February 10, 2003, and January 26, 2005. (R. 308, 265, 268).

The unchanged diagnosis, with Dr. Hatchett's opinion that the claimant had not significantly changed since 2000 (R. 262), and Drs. Melson and Hatchett's continual advisement of conservative treatment also support the ALJ's conclusion that the limitations stated "several" times by the treating physicians are consistent with the claimant's ability to perform restricted sedentary work.   As the objective medical evidence suggests qualification for limited light or unlimited sedentary physical exertion levels, this court finds that the ALJ's determination of the claimant's RFC to perform restricted sedentary work is consistent with the medical opinions of record and is supported by substantial evidence.

**B. The ALJ's credibility determination**

The claimant alleges that the ALJ's credibility determination is not supported by substantial evidence.  If an ALJ decides not to credit subjective testimony of a claimant, the ALJ must discredit it explicitly and should articulate reasons for discrediting. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).  A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by this court. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  The ALJ found the claimant's testimony to be "credible only to the

extent that she cannot perform work related activities at the light and heavier levels of exertion." (R. 20).

The ALJ partially discredited the claimant's testimony because of allegations unsubstantiated or unsupported by objective medical evidence of record.  The ALJ noted that the claimant's testimony regarding a diagnosis of carpal tunnel syndrome is unsubstantiated.  The evidence of record at the time of the ALJ's decision shows treatment for the claimant's on-the-job hand injury, but shows neither further treatment for hand-related complaints nor a diagnosis of carpal tunnel syndrome.[7] (R. 20).  Further, the record contains evidence of only five visits to Dr. Hollis at the Killen Clinic which all show claimant's complaints of and treatment for gynecological issues. (R. 140-49).  The ALJ also found that claimant's testimony of side effects of her prescriptions for pain and depression were inconsistent with the record and are not supported by objective medical evidence; although the claimant testified that her prescribed medicines made her sleepy, the claimant's drug regimen reflects no change in correlation to complaints of disabling side effects and remained almost entirely consistent throughout the treatment of record (R. 19).  The ALJ then found that the "claimant's testimony regarding disabling pain and resulting functional limitations is not supported by the medical evidence of record." (*Id.*).

A claimant's subjective testimony of pain or other symptoms is sufficient evidence of an alleged disability when it satisfies this Circuit's three-part pain standard and is not properly discredited by the ALJ.  The pain standard requires: (1) evidence of an underlying condition; and

---

[7] Dr. Hatchett discovered additional evidence suggesting carpal tunnel syndrome following the ALJ's decision.  The ALJ could not consider this evidence when making his findings; the claimant submitted the new evidence to the Appeals Council on request for review.

(2) *either* (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition; *or* (b) evidence that the objectively-determined medical condition can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  A finding of disability may be supported by the claimant's own subjective testimony when it is supported by medical evidence that satisfies the pain standard. *Foote*, 67 F.3d at 1561.

The ALJ found objective medical evidence of an underlying condition, this satisfying the first part of the pain-standard.  However, the ALJ found that neither portion of the second part of the standard was met, and thus the claimant's subjective complaints of pain and other symptoms were not credible; the ALJ concluded that the "objective findings in the medical record do not confirm the claimant's allegations of pain, nor are her medical impairments of such severity that they would reasonably be expected to produce the degree of pain and resulting functional limitations" and so such testimony is not substantiated by the evidence of record. (R. 19).

The claimant alleges that the ALJ's credibility determination is erroneous, in that it relies largely on evidence predating the alleged onset date of January 29, 2003.  The claimant's diagnosis is unchanged in multiple MRI scans, both preceding and following the alleged onset date, and the claimant's subjective complaints are generally consistent; such consistency, coupled with the ALJ's concurrent reliance on evidence post-dating the alleged onset, supports the ALJ's use of evidence predating the alleged onset.

The claimant also alleges that the ALJ erroneously selectively cited to the record.  The claimant alleges that the treatment notes from Dr. Hatchett dated December 10, 2004, which contain complaints of significant pain and intermittent radicular leg pain, are contrary to that evidence "selectively cited" by the ALJ.  The claimant's December 10, 2004 complaints are

25

neither new nor remarkable. (*See* R. 178-93, 259-68) (noting occasional complaints of radicular pain both before and after the alleged onset date); the December 10, 2004 subjective complaints of intermittently significant pain and radicular pain are not contrary – as alleged by the claimant – but in fact are consistent with the totality of the record, which shows that the claimant has made similar subjective allegations on multiple other dates.  Further, neither claim is substantiated by objective medical findings of record.  The ALJ's failure to cite to all evidence of record is not error, as his ultimate credibility determination and conclusion of the application of the pain standard are not contrary to the medical evidence of record.  The ALJ considered the claimant's subjective allegations and properly discredited the claimant's testimony.  The ALJ properly concluded that the claimant's subjective allegations were inconsistent and generally unsubstantiated in the record and, thus, found them not credible because they failed to satisfy this Circuit's pain standard.  This court finds that the ALJ's credibility determination is supported by substantial evidence.

**C. Enumeration of vocational opportunities available in the economy**

The claimant alleges that the Commissioner failed to identify work in the economy available to the claimant.  The ALJ determined that the claimant was unable to perform her PRW. (R. 22)  Once a claimant proves that she can no longer perform her past relevant work, "the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

> Work exists in the national economy when there is a significant
> number of jobs (in one or more occupations) having requirements
> which [the claimant is] able to meet with [his or her] physical or

26

> mental abilities and vocational qualifications. . . . [I]f work that
> [the claimant] can do does exist in the national economy, [the
> Commissioner] will determine that [the claimant is] not disabled.

20 C.F.R. § 416.966(b).

At the June 7, 2005 the ALJ asked the VE to consider whether an individual of the claimant's same age, educational level, work history and RFC (identified as the capacity to perform sedentary work with a sit/stand option and no more than moderate impairments to daily living activities, social functioning, concentration, and persistence and pace), would be able to perform the claimant's PRW.  The VE responded that based, on the hypothetical, such an individual was precluded from performing the claimant's PRW. (R. 445). The ALJ then asked whether any sedentary unskilled jobs were available to such a hypothetical individual, to which the VE responded affirmatively, suggesting as examples a final assembler, rotor assembler, or an electronic component tester; the VE noted that the job examples identified each exist in the regional economy at numbers of 2,500 or greater and in the national economy in numbers in excess of 300,000 each. (*Id.*).  Based on the VE's testimony, the *Medical Vocational Guidelines* Rule 201.28, and the *Dictionary of Occupational Titles*, the ALJ concluded that a significant number of jobs were available to the claimant in the national economy. (R. 21-22).

The claimant alleges that the Commissioner failed to meet his burden of proof to establish available vocational opportunities because the other work identified by the ALJ was supported by VE testimony solicited via an improper hypothetical question that did not fully encompass the claimant's limitations. The hypothetical questions posed to the VE relied on the ALJ's RFC determination, which the claimant argues failed to include the claimant's subjective complaints of manipulative limitations.  As noted above, this court finds that the ALJ's RFC

27

determination is supported by substantial evidence.  The VE testified that a restriction to only occasional handling would preclude the claimant's gainful employment. (R. 446).  However, at the administrative hearing, the ALJ noted no objective handling limitation, denying the claimant's request for a manual dexterity test due to a lack of actual diagnosis of carpal tunnel syndrome. (R. 447-48).  The claimant cites raw data contained in the FCE which shows that the claimant performed poorly on a manipulation test and alleges that, thus, the claimant is precluded from performing those jobs identified by the VE because they entail the frequent use of the hands.  However, the FCE's ultimate conclusion, considering all raw data and test results, determined that the claimant had the capacity to perform restricted light work and unrestricted sedentary work. (R. 296).  Additionally, Dr. Johnson, who performed a consultative examination on the claimant, opined that the claimant can handle small objects. (R. 217).  Because the claimant's subjective testimony of handling limitations is unsubstantiated by and inconsistent with the record, the omission of manipulative limitations in the ALJ's hypothetical questions and suggested vocational opportunities is not erroneous.

Citing to *Vega v. Massanari*, 265 F.3d 1214, 1220 (11th Cir. 2001), the claimant argues that the ALJ erred in not including the claimant's subjective complaints in the hypothetical question posed to the VE.  The claimant testified that she had to lie down three to four times a week for her pain to subside. (R. 442).  When asked whether a person with such a requirement would be unable to engage in gainful activity, the VE responded affirmatively. (R. 446-47).  The ALJ discredited the claimant's allegations of limitations to daily living, such as the need to lie down frequently, as the record "does not show the existence of medical conditions that can reasonably be expected to produce such limitations of activities." (R. 20).  For the reasons below,

28

this court finds that the ALJ's failure to include the claimant's subjective complaints was not erroneous.

The ALJ is not required to include findings in the hypothetical that the ALJ properly rejected as unsupported. *Crawford v. Barnhart*, 363 F.3d 1155, 1161 (11th Cir. 2004); *see also May v. Astrue*, 226 F. A'ppx. 955, 960 (11th Cir. 2007) (holding that the ALJ is not required to consider hypothetical questions posed to the VE that include discredited testimony). As discussed above, the ALJ properly discredited the claimant's unsubstantiated subjective complaints of daily living activity limitations (R. 20) and rejected the claimant's subjective allegations of pain because they failed to meet the Eleventh Circuit pain standard (R. 19). The ALJ did not err by omitting the claimant's subjective allegations from the hypothetical questions, and so the hypothetical questions posed to the VE were complete.

Substantial evidence of record, including the Medical Vocational Guidelines "Grids" and the testimony of VE Elliott at the administrative hearing, supports the ALJ's conclusion that other work is available to the claimant in the economy. The Commissioner sufficiently met his burden, in consideration of the claimant's substantiated impairments in totality, of enumerating other work in the regional and national economies available to the claimant. Further, the claimant did not meet her additional burden of proving an inability to perform that work. *See Hale v. Bowen*, 831 F.3d 1007, 1011 (11th Cir. 1987) (holding that the burden of proof shifts back to the claimant to prove that she is unable to perform the jobs suggested by the Commissioner). Therefore, the Commissioner satisfied his burden of enumerating vocational opportunities available to the claimant in the regional and national economy.

**D. Evidence newly submitted to the Appeals Council**

The claimant alleges that the Appeals Council did not properly consider the newly

submitted evidence.  On October 13, 2005, the claimant requested review by the Appeals Council

of the ALJ's September 21, 2005 hearing decision. (R. 351).  Concurrently with the request for

review, the claimant submitted new evidence to the Appeals Council, including HealthSouth

therapy records from 2000 and 2002, MRI results from HealthSouth dated October 28, 2005,

treatment records from the North Alabama Bone and Joint clinic dated July 2005 through

November 2005, and a treatment note from the Southern Rural Health Care Consortium dated

November 9, 2005. (R. 352-424).  On July 24, 2006, having found no reason under the rules of

the Appeals Council to review the ALJ's decision, the Appeals Council denied the claimant's

request for review. (R. 4).

This court may review the Appeals Council's denial of review when the claimant

properly presents new evidence to the Appeals Council and may consider whether that new

evidence renders the denial of benefits erroneous. *Ingram v. Astrue*, 496 F.3d 1253, 1262 (11th

Cir. 2007).

> If new and material evidence is submitted, the Appeals Council shall
> consider the additional evidence only where it relates to the period on
> or before the date of the administrative law judge hearing decision.
> The Appeals Council shall evaluate the entire record including the
> new and material evidence submitted if it relates to the period on or
> before the date of the administrative law judge hearing decision.  It
> will then review the case if it finds that the administrative law judge's
> action, findings, or conclusion is contrary to the weight of the
> evidence currently of record.

20 C.F.R. § 404.970(b), 416.1470(b); *see also Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir.

1998) (stating that the Appeals Council shall evaluate the entire record, including the new and

material evidence submitted to it *if* it relates to the period on or before the ALJ hearing decision). Evidence not existing at the time of the ALJ decision must reflect or relate to an objective perception of the claimant's condition *as it existed* prior to the ALJ's decision. *Lipscomb v. Barnhart*, 199 F. App'x. 903, 907 (11th Cir. 2006); *see Gibbs v. Barnhart*, 156 F. App'x. 243, 247 (11th Cir. 2005) (holding that new evidence must relate to the time period on or before the date of the ALJ's decision and because evidence submitted to the Appeals Council concerned the claimant's condition after the ALJ's final decision, it was not material to the decision, and remand was not required). Accordingly, in this case, the record before the Appeals Council includes only a portion of the evidence newly submitted following the ALJ's decision.

The evidence submitted to the Appeals Council that is new and chronologically relevant, and therefore considered "currently of record," includes the HealthSouth therapy records from 2000 and 2002 and the portions of the North Alabama Bone and Joint Clinic treatment notes and test results from July and August of 2005. That evidence not currently of record before the Appeals Council includes the treatment notes from Dr. Hatchett dated October 11 and 25, 2005, the MRI results from HealthSouth dated October 28, 2005, the treatment notes from the Southern Rural Health-Care Consortium dated November 9, 2005, and the electrodiagnostic and nerve conduction study results from the North Alabama Bone and Joint Clinic date November 14, 2005. This evidence is not chronologically relevant evidence, as it came into existence after the ALJ hearing decision of September 21, 2005. Additionally, the electrodiagnostic and MRI findings are both noted as "new" and recent findings reflecting changes in the claimant's condition since the administrative hearing. (R. 360, 369); the evidence of objective findings does not relate to the claimant's condition as it existed on or prior to September 21, 2005, and so does

31

not meet the special circumstances identified in *Lipscomb* for the Appeals Council's consideration of evidence not existing at the time of the ALJ's decision.

The Appeals Council needed only consider the chronologically relevant evidence submitted, including the 2000-2002 therapy records, the treatment notes from July 7 and August 4, 2005, and the electrodiagnostic and nerve conduction study results from July 28, 2005.  These records provide no objective findings that are contradictory to the weight of the evidence of record available to the ALJ.  The claimant argues that the "new evidence corroborates [the claimant's] testimony that she needs to lie down during the day." (Cl. Br. 22).  The evidence to which the claimant cites, including treatment notes from Dr. Hatchett dated July 27, 2005 and August 4, 2005, contain the claimant's own subjective complaints, which are generally consistent with those allegations of record which the ALJ properly discredited via the pain standard, as discussed above.  The electrodiagnostic results of July 28, 2005 found "no obvious evidence of radiculopathy" (R. 359).  The claimant produced no chronologically relevant objective medical evidence that corroborates the claimant's subjective allegations of radicular pain.

In consideration of the Appeals Council's denial of review, this court finds that the denial of review was not erroneous.  The Appeals Council's consideration of the newly submitted evidence and finding "that [the] information does not provide a basis for changing the Administrative Law Judge's decision" was appropriate. (R. 5).  The weight of the evidence of record before the Appeals Council, including the new and chronologically relevant evidence, is not contrary to the ALJ's decision and so review by the Appeals Council was not required under 20 C.F.R. § 404.970(b).  The Appeals Council's denial of the claimant's request for review is supported by substantial evidence of record.

**VI. Conclusion**

For the reasons stated above, this court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.  The ALJ's RFC and credibility determinations and identification of vocational opportunities in the economy available to the claimant are supported by substantial evidence of record.  The Appeals Council's denial of review, in consideration of the new evidence, is supported by substantial evidence.

The court will enter a separate order in conformity with this memorandum opinion.

DATED this 19th day of June, 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE