IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| KATHY D. NICHOLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. CV-06-BE-1956-NW |
| | ) |
| MICHAEL J. ASTRUE | ) |
| Commissioner of the Social, | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

This matter is before the court on "Motion for Reconsideration." (doc. 19). In that motion, the claimant requests that this court reconsider its opinion affirming the Commissioner's decision. (doc. 19). She bases her request on the opinion's failure to properly consider one treating physician's limitations on her ability to perform repetitive bending; another treating physician's limitation on any bending, twisting, crawling, squatting, or climbing; a consulting physician's limitation on prolonged sitting and standing; and the treatment of the vocational expert's testimony.

For the reasons stated below, the court will grant the motion, vacate its previous order (doc. 18 ) and memorandum opinion (doc. 17) and reverse and remand the case to the Commissioner for an evaluation consistent with this opinion.

## II. Facts

At the date of the ALJ hearing, the claimant was forty-two years old. (R. 12). The claimant testified that she injured her back her back while working. (R. 12). She has previously worked as a kiln operator at a tile plant, a deli worker, a cashier, and a mold setter. (R. 12). The claimant had not engaged in substantial gainful employment since January 29, 2003, the alleged onset date of disability. (R. 21). The relevant facts pertaining to this motion for reconsideration are as follows.

### *The ALJ Hearing*

On June 7, 2005, the claimant appeared for a hearing before the ALJ. (R. 428). When asked how long she could sit at one time, the claimant stated, "[a]t times it would be probably ten or 15 minutes, and then at times I might could sit 30." (R. 439). When asked how long she could stand at one time, the claimant stated "[p]robably about ten or 15 minutes." (R. 439). Furthermore, the claimant stated that she must lie down during the day "three to four days out of the week." (R. 442). Before the Vocational Expert testimony began, the claimant's attorney reminded the ALJ that physicians had restricted the claimant to no repetitive bending, and also no prolonged sitting, standing, walking, lifting or carrying. (R. 442-3). Without acknowledging on the record that he was considering this information, the ALJ began discussing an unrelated topic. (R. 443).

Subsequently, the ALJ asked the Vocational Expert one hypothetical question regarding an individual's capacity to work with certain physical limitations. The portion of the hypothetical relating to physical limitations is as follows: "assume an individual of the claimant's age, which is right now 42, high school GED, with the work history that you've stated, and we'll say

2

sedentary, sit/stand option with no more than moderate impairments and activities of daily living. . . " (R. 445). Based on this hypothetical, the VE concluded that the claimant could perform work existing in the national economy such as a final assembler, a rotor assembler, and a tester of electronic component. (R. 445). The ALJ neither presented the bending limitation in another hypothetical question nor raised it in any other manner during the hearing. The claimant's attorney, however, did ask the VE the following hypothetical question: "If the claimant, as testified, had to lie down three to four times, on an average fo [sic] three to four times a week for, let's say an hour to two hours a day, would that in any way have any impact on her ability to be employed?" (R. 447). The VE responded that this limitation "would preclude the ability to maintain any gainful employment." (R. 447).

*The ALJ's Decision*

On September 21, 2005, the ALJ denied the claimant's request for social security benefits. (R. 8). In reaching his decision, the ALJ stated that he accorded great weight to two treating physician's opinions, that of Dr. Melson and Dr. Hatchett, respectively. (R. 19). Dr. Melson is a neurosurgeon, and Dr. Hatchett is an orthopedic surgeon. (R. 14). The two physicians are in practice together. (R. 14).

In his recitation of the facts, the ALJ noted that in April 2003, Dr. Melson determined the claimant to be precluded from lifting more than ten pounds, bending, twisting, crawling, squatting, or climbing. (R. 14). Furthermore, the ALJ acknowledged that in February 2004, Dr. Hatchett noted that the claimant had "reached maximum medical improvement in 2000" and that her condition had "not changed significantly since that time." (R. 20). However, the ALJ did not mention that, during the same visit, Dr. Hatchett found that the claimant should not engage in

3

"repetitive bending." (R. 262). The ALJ addressed neither of the physician's notations concerning the claimant's bending limitations in assessing the claimant's RFC.

Instead, the ALJ noted recent examinations by both physicians showed normal sensation, strength, reflexes, and negative straight leg raising tests. Furthermore, the ALJ noted that, in September 2003, Dr. Melson did not believe the claimant to be a candidate for surgery. (R. 20). Additionally, the ALJ listed in support of his decision that Dr. Hatchett "noted on several occasions that the claimant was limited to light type work with restrictions of lifting no more than 20 pounds, such as when she was seen on January 18, 2002." (R. 20). However, the ALJ did not acknowledge that these findings conflicted with the limitations Dr. Melson noted in his 2003 report.

Furthermore, the ALJ used Dr Melson's and Dr. Hatchett's opinions as treating physicians to discredit portions of consulting physician Dr. Johnson's opinion. Dr. Johnson found "that [the claimant] would not be able to do work related activity such as prolonged sitting, standing, walking, lifting, or carrying." (R. 217). Also, Dr. Johnson "noted findings such as *positive* straight leg raising tests and weakness on the right (leg)."(R. 19). However, the ALJ found that greater weight should be accorded to treating physicians Dr. Melson's and Hatchett's medical examinations, occurring *after* Dr. Johnson's examination that "continued to show normal sensation, strength, reflexes, and *negative* straight leg tests."(R. 20). After noting the prolonged sitting, standing, walking, lifting and carrying restriction Dr. Johnson had found, the ALJ concluded "even despite the clinical findings noted by Dr. Johnson, he nonetheless concluded that the claimant can perform sedentary type work with the ability to alternate between positions, in that he concluded she can handle small objects and needs to avoid prolonged sitting,

standing, walking, lifting, and carrying." (R. 20). The ALJ did not subsequently address these limitations.

The ALJ then noted that the vocational expert had enumerated jobs existing in significant numbers in the regional and national economy that the claimant could perform despite her impairments. (R. 21). Furthermore, the ALJ determined that the claimant's vocational profile "most closely approximates that found in rule 201.28[1] of the Medical Vocational Guidelines. That rule, used as a framework for adjudication, indicated that a finding of not disabled is appropriate." (R. 21). Based on these determinations, the ALJ found the claimant had the RFC to perform a "significant range of sedentary work" with a sit and stand option that existed in the national economy; therefore, the claimant was not disabled as defined by the Social Security Act. (R. 22).

### III. Discussion

The claimant argues that the ALJ improperly assessed the medical evidence of record in making his unfavorable decision. The ALJ must evaluate all medical evidence when making a disability determination. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th cir. 1997). Then, the ALJ has a duty to indicate clearly what weight has been accorded to each item of evidence and the reasons for his decision. *Coward v. Schwieker* 662 F.2d 731, 735 (11th Cir. 1981). This clarity enables the reviewing court to determine whether the ultimate decision is based on substantial evidence. *Id.*

In this court's initial opinion, material elements of the treating physicians' medical

---

[1] Rule 201.28 encompasses individuals between the ages of eighteen and forty-four, who have a high school education or more, who have untransferable skilled or semi-skilled previous work experience. 20 C.F.R. Pt. 220, App.2

opinions were not properly addressed. Upon reconsideration, this court finds that the ALJ did not include critical portions of Dr. Hatchett's and Dr. Melson's opinions in his decision. The ALJ determined that the claimant had the RFC to perform limited sedentary work with a sit or stand option. (R. 20). The ALJ purported to accord great weight to Dr. Hatchett and Dr. Melson's medical opinions. (R. 20). For example, the ALJ noted that in 2000 and 2002, Dr. Hatchett had indicated the claimant was capable of performing a full range of sedentary work. (R. 20).

However, Dr. Melson's progress notes *from 2003*, produced after the alleged disability onset date of January 29, 2003, expressly precluded any "bending, twisting, crawling, squatting, or climbing." (R. 179). Furthermore, in February of 2004, Dr. Hatchett advised the claimant not to engage in repetitive bending. (R. 262). These limitations were neither presented in a hypothetical question to the vocational expert, nor specifically addressed in the ALJ's decision. (R. 19). Plainly, the ALJ failed to articulate a rationale for ignoring this medical evidence.

Additionally, the ALJ failed to specifically address, beyond mere notation, the material portion of Dr. Johnson's opinion precluding the claimant from *prolonged* sitting and standing. The ALJ determined that Dr. Johnson's findings were consistent with the claimant's ability to perform sedentary work "with the ability to alternate between positions, *in that* [Dr. Johnson] concluded that [the claimant] can handle small objects and needs to avoid prolonged sitting, standing, walking, lifting and carrying." (R. 20). However, this determination alone, which simply restates Dr. Johnson's findings, does not remedy the restrictions Dr. Johnson found. For example, the ALJ did not specifically reject the claimant's statement that she had to lie down during the workday three to four times a week. A restriction on prolonged sitting and standing throughout the workday can be viewed as consistent with the need to lie down during the day, if

the combination of the total hours the claimant is able to sit and stand does not equal the eight hour workday. Moreover, the VE expressly found that the need to lie down during the workday would preclude all work. At the same time, the claimant may not be precluded from all work because of her prolonged sitting and standing restrictions if she could alternatively sit and stand unhindered throughout the eight hour work day. However, the problem here is that the ALJ failed to explicitly articulate why a restriction on prolonged sitting or standing, coupled with the claimant's professed need to lie down during work hours, did not preclude all work, or, alternatively, was unsupported by the record. Therefore, this court cannot conduct a meaningful review to determine whether the ALJ's decision is supported by substantial evidence.

Furthermore, the claimant argues that the original vocational expert's testimony did not properly determine whether jobs exist in the national economy that the claimant is able to perform. The claimant further argues that new VE testimony is necessary. Upon reconsideration, this court agrees.

For a vocational expert's testimony to constitute substantial evidence, the ALJ must pose hypothetical questions that account for *all* of the claimant's impairments. *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987). An exception to this rule exists when the ALJ has found the alleged impairments to be unsupported. *Crawford v. Comm. of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Here, the ALJ failed to present a hypothetical to the VE concerning the bending limitations of both Doctors Hatchett and Melson. Thus, the claimant's actual ability to perform work as a final assembler, rotor assembler or a tester of electrical components is uncertain. Moreover, because the ALJ did not provide a rationale for ignoring this medical evidence, this

court cannot determine whether or why the ALJ found the medical evidence to be unsupported. Thus, the exception does not apply. Therefore, the court cannot view the VE's testimony as substantial evidence supporting the ALJ's decision.

### IV. Conclusion

For the foregoing reasons, this court will enter a separate order contemporaneously with this opinion, GRANTING the motion for reconsideration (doc. 19) and VACATING the original memorandum opinion (doc. 17) and order (doc. 18) affirming the Commissioner's decision; and will REVERSE and REMAND this case for an evaluation consistent with this opinion.

DONE and ORDERED this 30th day of June 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE